**E-FILED**
Friday, 10 March, 2006  08:13:06 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VERNON JOHNSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 04-1068 |
| | ) | |
| CITY OF PEORIA, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>O R D E R</u>

Before the Court is Defendant's Motion for Summary Judgment [Doc. # 8]. For the reasons that follow, the motion will be allowed.

### I.    <u>BACKGROUND</u>

The following facts are undisputed. Plaintiff works for Defendant in its Workforce Development Department ("WDD") which is funded primarily by federal funds from the Department of Labor. (Defendant's Motion for Summary Judgment, Doc. # 8 at ¶ B(5) [hereinafter Def.'s Mot.].) Plaintiff began working for Defendant in 1991 as a temporary worker. (<u>Id.</u> at ¶ B(1).) In 1993, Plaintiff became a full-time permanent Vocational Counselor; his job title later changed to Career Counselor. (Plaintiff's Response to Defendant's Summary Judgment Motion, Doc. # 14 at ¶ II(D)(8) [hereinafter Pl.'s Resp.].) In 1997, Jennifer Brackney ("Brackney") became Operations Manager of the WDD. As such she managed the Career Counselors, including Plaintiff. (<u>Id.</u> at ¶ D(9).)

In August 1999, the WDD moved into new offices and during this time the time clock was not used. While the office was being set

up, Plaintiff and another black male, Sam Jackson ("Jackson"), left
to get some bakery goods.  When they returned, Brackney reprimanded
them for not signing a sign-out sheet that had just been placed on
the counter.  Johnson then inquired why he and Jackson had to sign
the sheet when the white employees did not.  Later, Plaintiff told
the office he was "fed up with the separation of workers by race
and gender."  Following this comment a meeting was held with
Brackney, Plaintiff, WDD Department Head Bashir Ali, and a
representative from the Human Resources Department.  Later, on
August 13, 1999, a staff meeting occurred to discuss Plaintiff's
concerns.  (Pl.'s Resp. at ¶¶ II(D)(16-20).)  Ultimately,
Plaintiff's concerns were made an employment grievance which was
handled by Defendant's Equal Employment Opportunity ("EEO") office.
(Id. at III(A)(1).)

Plaintiff alleges that after the August 13th meeting, Brackney
began a series of harassing acts including: (1) in September 1999,
she suggested Plaintiff was not reporting to work on time (in
response, Plaintiff noted that the office clock was 10 minutes
late); (2) in October 1999, she gave Plaintiff an employment
evaluation with an average score of 86% which disqualified him for
a 5% salary increase; (3) in December 1999 and January 2000, she
"allowed a non-management employee to perform secret file reviews
on [Plaintiff]"; (4) in March 2000, she wrote Plaintiff up for not
finding a replacement to cover his shift in the Resource Center
while he was on vacation; (5) in March 2000 through April 2000, she
told Plaintiff to use "flex time" instead of "comp time" when he
met with customers who worked "first shift" while she allowed two

2

white females to use "comp time"; and (6) in April 2000, she ordered him to work the "Area Business Connection" but she let others skip working there.  (Pl.'s Resp. at ¶ II(D)(20).)

In February 2000, the WDD created a new job position titled Business Service Representative.  (Id. at ¶ II(D)(24).)  In May 2000, Plaintiff was informed that lay-offs in the WDD would occur because of a significant reduction in federal funds, and that if he wanted to avoid a lay-off[1] he would have to apply and be hired for the new Business Service Representative position.  (Def.'s Mot. at ¶ B(11); Pl.'s Resp. at ¶ II(D)(20).)  Three black males-- Plaintiff, Clyde Gulley, and Sam Jackson--applied for the Business Service Representative positions.  (Pl.'s Resp. at ¶ II(D)(40).) On June 5, 2000, two black females--Marcia Bolden and Marla Byrd-- were hired for the Business Service Representative position. (Id. at ¶ II(D)(39).)  As a result, Plaintiff was laid off on June 30, 2000, but was rehired in July 2001.  (Def.'s Mot. at ¶ B(9).)  In 2003, disciplinary proceedings were initiated against Plaintiff for failure to follow the overtime policy, however, Plaintiff was eventually provided compensatory time equal to the amount of overtime he worked and he was not disciplined.  (Id. at ¶ B(23).)

In September 2000, Plaintiff filed an Equal Employment Opportunity Commission (EEOC) Charge of Discrimination claiming race and sex discrimination in connection with his being required to use flex time instead of comp time, his being laid off, and his not receiving the Business Service Representative position.

---

[1]Lay-offs were done by seniority in compliance with the Collective Bargaining Agreement then in place between Plaintiff's union and Defendant.  (Id. at ¶ B(13).)

(Amended Complaint, Doc. # 5 at Ex. A.)  Plaintiff received a right to sue letter on December 15, 2003.  He filed the instant action on March 8, 2004.  He later filed an Amended Complaint claiming Defendant discriminated against him on the basis of his sex or in the alternative retaliated against him for filing a discrimination charge in 1999 by (1) refusing to allow him to take "comp time" for extra work on March 28, 2000; (2) terminating his employment on June 30, 2000, (3) harassing him and creating a hostile work environment; and (4) harassing him and initiating a disciplinary proceeding against him in 2003.

## II.  LEGAL STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party has the responsibility of informing the Court of portions of the record or affidavits that demonstrate the absence of a triable issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may meet its burden of showing an absence of disputed material facts by demonstrating "that there is an absence of evidence to support the nonmoving party's case."  Id. at 325.  Any doubt as to the existence of a genuine issue for trial is resolved against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Cain v. Lane, 857 F.2d 1139, 1142 (7th Cir. 1988).

If the moving party meets it burden, the nonmoving party then

has the burden of presenting specific facts to show that there is a genuine issue of material fact. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986). Federal Rule of Civil Procedure 56(e) requires the nonmoving party to go beyond the pleadings and produce evidence of a genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. Nevertheless, this Court must "view the record and all inferences drawn from it in the light most favorable to the [nonmoving party]." <u>Holland v. Jefferson Nat. Life Ins. Co.</u>, 883 F.2d 1307, 1312 (7th Cir. 1989). Summary judgment will be denied where a reasonable jury could return a verdict for the nonmoving party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); <u>Hedberg v. Indiana Bell Tel. Co.</u>, 47 F.3d 928, 931 (7th Cir. 1995).

## III. <u>ANALYSIS</u>

Plaintiff has brought two separate claims against Defendant: a discrimination claim and a retaliation claim. The Court will address each claim in turn.

### A.   Discrimination Claim

Title VII makes it an unlawful employment practice for an employer to discriminate against an individual with respect to the terms or conditions of the employees' employment on the basis of his sex. 42 U.S.C. § 2000e-2(a)(1). In the instant action, Plaintiff has not offered any direct evidence of Defendant's illegal motive. Thus, the Court must analyze Plaintiff's claims under the familiar three-step model of <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). First, Plaintiff must establish a *prima facie* case of intentional discrimination. In order to

5

establish a *prima facie* case of employment discrimination, Plaintiff must prove he was: "(1) in a protected class; (2) performing [his] job satisfactorily; (3) the subject of a materially adverse employment action; and (4) others outside of the protected class were treated more favorably." Gonzalez v. Ingersoll Milling Machine Co., 133 F.3d 1025, 1031 (7th Cir. 1998).

Once Plaintiff establishes a *prima facie* case, it creates a rebuttable presumption of discrimination, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its allegedly biased employment decision. Johnson v. City of Fort Wayne, 91 F.3d 922, 931 (7th Cir. 1996). Once the defendant produces a legitimate reason, the plaintiff bears the burden of showing that the defendant's proffered reason is pretextual and that the employer's actual reason was discriminatory. See id.

Plaintiff's sex discrimination claim is a reverse discrimination claim because men are not a historically discriminated-against group. Mills v. Health Care Service Corp., 171 F.3d 450, 454 (7th Cir. 1999). While the protections of Title VII are not limited to members of historically discriminated-against groups, if strictly applied, the first prong of the traditional McDonnell Douglas burden shifting test--that Plaintiff is a member of a protected class--would eliminate all reverse discrimination claims. To remedy this problem, the Seventh Circuit has required reverse discrimination plaintiffs to show at least one background circumstance giving rise to an inference of discrimination in lieu of establishing the first prong of the

6

<u>McDonnell Douglas</u> test.  <u>Id.</u> at 457.  Although Defendant has not addressed this issue in its Motion for Summary Judgment, Plaintiff has briefed it extensively in his response.  Because this issue was not raised in Defendant's motion, the Court will not address it here.   However, because the Court believes this issue may be dispositive as to Plaintiff's discrimination claim, the Court directs Defendant to file a new summary judgment motion addressing whether Plaintiff can show the first prong of the <u>McDonnell Douglas</u> test.

As for its current motion, Defendant argues that Plaintiff has failed to establish he suffered an adverse employment action or that other similarly situated employees outside his protected class were treated more favorably.

**1.   Plaintiff suffered a materially adverse employment action when he was not hired as a Business Service Representative.**

Plaintiff has listed several harassing acts by Brackney which occurred after the August 1999 staff meeting.  In order for these acts to qualify as materially adverse employment actions, they must have materially altered the conditions of Plaintiff's employment.  <u>Whittaker v. Northern Illinois University</u>, 424 F.3d 640, 647 (7th Cir. 2005).  "Typically, adverse employment actions are economic injuries."  <u>Markel v. Board of Regents of Univ. of Wis. Sys.</u>, 276 F.3d 906, 911 (7th Cir. 2002).  Thus, Brackney's September 1999 suggestion that Plaintiff was not reporting to work on time; her allowing a non-management employee to perform secret reviews of Plaintiff's files; her March 2000 write-up of Plaintiff for not finding a replacement to cover his shift in the Resource

7

Center while he was on vacation; her requesting that Plaintiff use "flex time" instead of "comp time"; and her requiring him to work at the "Area Business Connection" are not materially adverse employment actions as Plaintiff has made no showing that he suffered any tangible job consequence as a result of this conduct. Cf. Whittaker 424 F.3d at 648 (negative evaluations and written warnings not adverse employment action where no tangible job consequences resulted); Jordan v. Chertoff, 2005 WL 3508309 at *3 (7th Cir. Dec. 23, 2005)(unpublished order) (failure to grant request for overtime not adverse employment action).

Plaintiff also claims he was denied a 5% wage increase after Brackney gave him a performance review rating of less than 90%. However, Plaintiff admits that his review was changed to reflect an average rating of 90%. Furthermore, although Plaintiff did not receive the 5% raise, he admits that another male employee was given a raise. (Pl.'s Resp at Ex. 4.) This fact precludes Plaintiff from relying on this employment action to show discrimination based on his sex as he has not shown any female employees were treated more favorably. Gonzalez, 133 F.3d at 1031.

Next, Plaintiff claims his termination in June 2000 was a materially adverse employment action. However, the record shows that this lay-off was carried out in order of seniority and that female employees were laid off as well. Thus, this employment action can not be used to show discrimination based on sex. Id.

Finally, Plaintiff argues that Defendant's failure to hire him as a Business Service Representative is a material adverse employment action. The Court agrees. Defendants failure to hire

8

Plaintiff led to the economic consequence that Plaintiff was laid off from his job at the WDD for a year.

> **2. Defendant has failed to inform the Court of portions of the record or affidavits that demonstrate the absence of a triable issue that similarly situated employees outside of Plaintiff's protected class were treated more favorably in the hiring of a Business Service Representative.**

Defendant argues that Plaintiff has not shown similarly situated employees outside his protected class were treated more favorably because another female employee interviewed for the Business Service Representative position but was not hired for the position.  Plaintiff has not specifically addressed this argument. The record shows there were only two openings for the Business Service Representative position.  The Court is not sure what significance to put with the fact that another woman was not chosen for one of the two open positions, and Defendant has failed to cite any authority to support this argument.  Accordingly, the Court finds Defendant has failed to show an absence of a triable issue as to whether similarly situated employees outside of Plaintiff's protected class were treated more favorably.  Consequently, Defendant's motion is denied with respect to Plaintiff's discrimination claim with leave to file a new summary judgment motion on this claim as earlier stated.

**B.    Retaliation Claim**

Plaintiff's next claim is that Defendant retaliated against him for complaining of discrimination in 1999.  Defendant argues that Plaintiff has failed "to prove under either the direct or indirect methods of proof . . . any act or omission on the part of

the [Defendant] that would give rise to a claim of unlawful retaliation."  In response, Plaintiff argues Brackney retaliated against him by (1) suggesting he was not reporting to work on time; (2) giving him an employment evaluation which disqualified him for a 5% salary increase; (3) allowing "a non-management employee to perform secret file reviews on [Plaintiff]"; (4) writing Plaintiff up for not finding a replacement to cover his shift in the Resource Center while he was on vacation; (5) telling Plaintiff to use "flex time" instead of "comp time" when he met with customers who worked "first shift" while she allowed others to use "comp time"; and (6) ordering him to work the "Area Business Connection" but she let others skip working there; and (7) failed to hire him as a Business Service Representative.

Title VII forbids an employer to "discriminate against any individual . . . because he has opposed any practice made an unlawful employment practice by [Title VII]."  42 U.S.C. § 2000e-3(a).  To make out a *prima facie* case of retaliation, an employee must show that (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal link between the protected expression and the adverse action.  Eiland v. Trinity Hosp., 150 F.3d 747, 753 (7th Cir 1998).

As stated above, Brackney's suggestion that Plaintiff was not reporting to work on time; her allowing a non-management employee to perform secret reviews of Plaintiff's files; her March 2000 write-up of Plaintiff for not finding a replacement to cover his shift in the Resource Center while he was on vacation; her requesting that Plaintiff use "flex time" instead of "comp time";

10

and her requiring him to work at the "Area Business Connection" are not adverse employment actions as Plaintiff has made no showing that he suffered any tangible job consequence as a result of this conduct.  Cf. Whittaker 424 F.3d at 648 (negative evaluations and written warnings not adverse employment action where no tangible job consequences resulted); Jordan v. Chertoff, 2005 WL 3508309 at *3 (7th Cir. Dec. 23, 2005)(unpublished order) (failure to grant request for overtime not adverse employment action).

On the other hand, Plaintiff's claim that he was denied a 5% wage increase after Brackney gave him a performance review rating of less than 90% could be an adverse employment action.[2]  Further, as discussed above, Defendant's failure to hire him as a Business Service Representative is an adverse employment action.

Defendant again argues that Plaintiff has not shown similarly situated employees outside his protected class were treated more favorably because another female employee interviewed for the Business Service Representative position but was not hired for the position.  As discussed above, Defendant has failed to cite any authority to support this argument.  Consequently, Defendant's motion is also denied with respect to Plaintiff's retaliation claim.

---

[2]The Court recognizes that it has found this same conduct was not actionable as to Plaintiff's sex discrimination claim.  This is because Plaintiff's retaliation claim is based on his protected activity and not on his gender.

11

## IV.   CONCLUSION

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. # 8] is DENIED.

IT IS FURTHER ORDERED that Defendant file another summary judgment motion addressing whether Plaintiff can show the first prong of the McDonnell Douglas test as to his sex discrimination claim.  This motion should be filed on or before March 30.

ENTERED this   10th   day of March, 2006.


                                  s/ Joe B. McDade
                              JOE BILLY McDADE
                         United States District Judge